**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

SYT SOLUTIONS, LLC, BRIAN LINDEMANN,
and KRIS LINDEMANN

                       Plaintiffs,

v.

CRIS BURGER, LISA BURGER, DAVID
MCGOWAN, THE ADVANTAGE
COMPANIES, INC., and ADVANTAGE TAPE
RECEIVABLES, INC.

                       Defendants.

No. 20-794 (JRT/KMM)

**MEMORANDUM OPINION
AND ORDER GRANTING IN
PART AND DENYING IN PART
MOTIONS TO DISMISS**

---

Dwight G. Rabuse, James D. Kremer, and Jorgen M. Lervick, **DEWITT LLP**, 2100 AT&T Tower, 901 Marquette Avenue, Minneapolis, MN 55402, for plaintiffs.

Daniel M. Gallatin, **GALLATIN LAW, PLLC**, 5665 147th Street North, P.O. Box 167, Hugo, MN 55038, for defendants Cris Burger and The ADvantage Companies, Inc.

Jeffrey A. Olson, **JEFFREY A. OLSON, PLLC**, 7831 Glenroy Road, Suite 185, Edina, MN 55439, for defendant Lisa Burger.

Michael J. Tomsche, **TOMSCHE, SONNESYN & TOMSCHE, P.A.**, 8401 Golden Valley Road, Suite 250, Minneapolis, MN 55427, for defendant David McGowan.

Brandon M. Schwartz and Michael D. Schwartz, **SCHWARTZ LAW FIRM**, 600 Inwood Avenue North, Suite 130, Oakdale, MN 55128, for defendant Advantage Tape Receivables, Inc.

Plaintiffs SYT Solutions, LLC, Brian Lindemann, and Kris Lindemann (collectively "Plaintiffs") have brought this action related to their purchase of Defendant Advantage Tape Receivables, f/k/a Advantage Tape Advertising.  Defendants Cris Burger and Lisa Burger are former owner-shareholders of Advantage; Defendant The ADvantage Companies is a new company incorporated by Cris Burger in 2019; and Defendant David McGowan is a former Advantage salesperson, former independent contractor with SYT, and currently affiliated with ADvantage.

Plaintiffs' Complaint contains fifteen counts, including contractual breach, unjust enrichment, quantum meruit, negligent misrepresentation, fraud, deceptive trade practices, Lanham Act violations, and RICO violations, and seeks declaratory judgment. Defendants have filed four separate Motions to Dismiss, pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1).  The Court finds that Plaintiffs have not met their pleading burden with respect to their RICO claims and some of their common law and contract claims.  However, because Plaintiffs have plausibly alleged violations of the Lanham Act and other trademark infringement claims, and have met their burden with respect to other breach of contract and common law claims, the Court will grant in part and deny in part each of the pending Motions.

**BACKGROUND**

I.    **FACTUAL BACKGROUND**

Advantage Tap Receivables, f/k/a Advantage Tape Advertising ("ATA"), is a Nebraska corporation in the business of selling advertising that appears on the back of receipt tape in grocery stores and other businesses.  (Compl. ¶ 8, Mar. 24, 2020, Docket No. 1.)  ATA has two types of customers: those who advertise on store receipt tapes and the stores whose receipt tapes feature the advertisements.  (*Id*. at 1.)  Defendants Cris Burger and Lisa Burger ("the Burgers"), were the owner-shareholders of ATA.  (*Id*. ¶ 9.) David McGowan was ATA's Senior Executive Marketing Director and a key ATA salesperson.  (*Id*. at 2; *id.* ¶ 141.)

In 2017, Cris Burger approached Plaintiff Brian Lindemann about Lindemann purchasing ATA.  (*Id*. ¶ 12.)  Cris Burger expressed that he was interested in selling the business due to his fraught relationship with his ex-spouse and co-owner Lisa Burger.  (*Id.*) He represented to Brian and his spouse Kris Lindemann ("the Lindemanns") that Lisa had obtained a restraining order impairing Cris's ability to effectively manage the company, but that ATA was an otherwise successful business with a solid customer base.  (*Id*. ¶¶ 12, 14.)

Prior to and during the negotiation process, the Lindemanns conducted a due diligence investigation of ATA, which included review of ATA's income statements, balance sheets, bank statements, tax returns, revenue history and gross revenue reports,

and a limited review of advertising sales. (*Id.* ¶¶ 26–28.) Plaintiffs allege that the Burgers made false statements during these discussions and concealed material information that led Plaintiffs to erroneously believe that ATA was "a legally operating, financially sound, and stable business which, if purchased by the Lindemanns, would provide the Lindemanns with a positive financial return." (*Id*. ¶ 15.) The Lindemanns state that they reasonably believed that the Burgers provided them with all material information relevant to their interests in purchasing ATA's assets and that all information provided by the Burgers was accurate. (*Id.* ¶ 29.)

In the months following Cris Burger's initial outreach, the Lindemanns made several offers to purchase ATA. (*Id.* ¶ 16.) The Lindemanns formed Plaintiff SYT Solutions, LLC ("SYT") to act as the purchaser of ATA, and secured financing. (*Id.* ¶¶ 30, 31.) In October 2017, the Burgers, ATA, and SYT executed an Asset Purchase Agreement ("Agreement"). (Compl., Ex. B ("Agreement"), Mar. 24, 2020, Docket No. 1-2.) The Agreement covered the sale of all ATA's tangible personal property, interests in customer contracts, assignable licenses, physical property, as well as all Intellectual Property and associated goodwill. (*Id.* at § 1.) In exchange, Purchasers would pay $1,570,885.00 for the assets in two parts—$1,010,000.00 at closing and the remaining $560,885.00 via a Promissory Note, (Compl. ¶ 47), for which Brian Lindemann provided a Personal Guaranty, (Agreement § 2.1(c).)

-4-

The Agreement names ATA as "Seller," Cris and Lisa Burger as "Shareholders," and SYT, care of Brian Lindemann, as the "Purchaser." (*Id.* at 15–16.) The Agreement includes a series of representations and warranties made by the Seller related to the organization and good standing of ATA, legal status, financial information, customer accounts, and ownership by Shareholders. (*Id.* § 7.) Section 7.12 of the Agreement states:

> Seller has not withheld any material facts relating to the Assets from the Purchasers. No representation or warranty in this Agreement contains any untrue statement of a material fact or omits or will omit to state any material fact required herein or therein or necessary to make the statements herein or therein not misleading.

(*Id.* § 7.12.) The Agreement also includes indemnification clauses that bind both the Seller (ATA) and the Purchaser (SYT), (*id.* § 8), and requires Shareholders Cris Burger and Lisa Burger to sign Non-Compete Agreements, (*id.* § 9.1.)

The Non-Compete Agreements ("NCA") obligate Cris Burger and Lisa Burger to not compete against SYT for a period of four years. (Compl. ¶¶ 48–52; Compl., Ex. C ("C. Burger NCA"), Mar. 24, 2020, Docket No. 1-3; Compl., Ex. D ("L. Burger NCA"), Mar. 24, 2020, Docket No. 1-4.) Both contracts also include a clause which provides that the NCAs terminate automatically if SYT defaults on the Promissory Note. (C. Burger NCA § 2; L. Burger NCA § 2.) The Promissory Note defines an "event of default" to include "failure to make the payment of principal and/or interest when due." (L. Burger Aff. ¶ 11, Ex. 9 ("Promissory Note") ¶ 2, May 7, 2020, Docket No. 28-10.) According to the terms of the Promissory Note, payments were due on the 25th day of each month after the closing date

until November 25, 2021. (Promissory Note ¶ 1.) In addition to the NCA, Cris Burger executed an Independent Contractor Agreement under which he would continue to procure advertising contracts for SYT. (Compl. ¶ 62, Ex. E ("C. Burger ICA") § 1, March 24, 2020, Docket No. 1-5.)

After the closing on the sale of ATA's assets, Plaintiffs allege that they discovered multiple misrepresentations that Defendants Cris Burger, Lisa Burger, and ATA made, including the Burgers' failure to disclose relevant financial documents and communications reflecting ATA's lost profits, low value, and limited opportunities for customer growth in key areas. (Compl. ¶¶ 80–110.) Plaintiffs further allege that Cris Burger, Lisa Burger, and ATA made deliberate misrepresentations regarding cost increases for thermal paper and the level of competition in the industry. (*Id.* ¶¶ 111– 140.)

Plaintiffs claim that after closing they also uncovered evidence of fraudulent and deceptive sales practices by McGowan, through which McGowan and the Burgers had inflated ATA's sales numbers and alienated customers. (*Id.* ¶¶ 161–163.) Plaintiffs allege that McGowan fraudulently induced customers to enter into long-term advertising contracts or caused customers with short-term contracts to believe that they were responsible for long-term contracts and added unauthorized charges to customers' bills. (*Id.* ¶¶ 141–159, 236.) According to Plaintiffs, the Burgers knew of and potentially encouraged these practices, but concealed information about McGowan's behavior and

customer complaints, to Plaintiffs' detriment.  (*Id.* ¶¶ 162–165.)  After SYT implemented

policy changes due to customers complaints, McGowan resigned, and Plaintiffs allege that

advertising sales have significantly dropped.  (*Id.* ¶ 166.)

Plaintiffs further allege that, from 2018 on, Cris Burger shared proprietary SYT

information and coordinated with McGowan to compete against SYT.  (*Id.* ¶¶ 168–174.)[1]

In or about July 2019, Cris Burger incorporated Defendant ADvantage Companies, Inc., a

Minnesota corporation.  (Compl. ¶ 56.)  Plaintiffs allege that McGowan is now acting as a

sales representative for ADvantage, and that he and Cris Burger have been falsely

presenting ADvantage as a continuation of ATA in order to defraud SYT customers and

impermissibly compete against SYT.  (*Id.* ¶¶ 175–180.)  Plaintiffs further allege that

through this scheme, Cris Burger, McGowan, and ADvantage have misappropriated the

trademarks that SYT purchased from ATA.  (*Id.* ¶¶ 175–180, 269.)

On August 1, 2018, ATA sent notice that SYT was in default under the terms of the

Promissory Note and reiterated the ten-day deadline to cure the default.  (L. Burger Aff.

---

[1] Prior to August 2018, Plaintiffs allege that on one occasion in November 2017, Cris Burger shared information about SYT's thermal paper price increases with a competitor and on another occasion in April 2018, shared a PDF of five ads with a different competitor; Plaintiffs also allege that Cris Burger asked Brian Lindemann about pursuing a part-time advertising venture in April 2018, but Lindemann declined.  (Compl. ¶¶ 168–170.)  Plaintiffs also allege that Lisa Burger impermissibly shared a proprietary report detailing SYT advertisers' buying history with Cris Burger in July 2018, though Cris Burger was still working for SYT as an independent contractor at that time.  (*Id.* ¶¶ 67, 171.)

¶ 12, Ex. 10, May 7, 2020, Docket No. 28-11.)[2]  Plaintiffs do not dispute that they are in default on the Promissory Note.

## II.     PROCEDURAL HISTORY

Plaintiffs filed a Complaint against ATA, Cris Burger, Lisa Burger, David McGowan, and ADvantage on March 24, 2020.[3]  Plaintiffs brought claims for breach of the asset purchase agreement contract, unjust enrichment, quantum meruit, breach of non-competition agreements, breach of warranty, negligent misrepresentation, fraud or intentional misrepresentation, Racketeer Influenced and Corrupt Organizations Act ("RICO") violations, common law trademark infringement, federal unfair competition, false designation of origin, passing off and false advertising ("Lanham Act" violations), tortious interference with contract, Minnesota Deceptive Trade Practices Act ("MDTPA") violations, and breach of warranty to indemnify claims, and stated that Plaintiffs are entitled to declaratory judgement.  (Compl. ¶¶ 183–294.)

---

[2] Though they were not attached to the Complaint, the Court considers the Promissory Note and Notice of Default to be necessarily embraced by the pleadings because these documents create conditions for contracts that are central to the dispute, including the Agreement and NCAs. *Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012) ("Documents necessarily embraced by the pleadings include 'documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading.'" (quoting *Kushner v. Beverly Enters., Inc.*, 317 F.3d 820, 831 (8th Cir. 2003))).

[3] There is also an active state court proceeding related to this dispute.  On March 27, 2020, ATA initiated an action against SYT and Brian Lindemann in Minnesota state court for failure to make payments on the Promissory Note.  (Henn. Cty. Dist. Ct., Case No. 27-CV-20-4912).

Defendants filed four separate Motions to Dismiss, each asserting failure to state a claim upon which relief can be granted under Rule 12(b)(6)[4] and lack of subject matter jurisdiction under Rule 12(b)(1).[5]  (ATA Mot. Dismiss, April 13, 2020, Docket No. 8; L. Burger Mot. Dismiss, May 7, 2020, Docket No. 26; C. Burger and ADvantage Mot. Dismiss, May 8, 2020, Docket No. 34; McGowan Mot. Dismiss, June 16, 2020, Docket No. 56.) Because McGowan's Motion was filed after he filed an Answer and Crossclaims, (*see* McGowan Ans. & Crosscls., May 8, 2020, Docket No. 33), the Court will treat it as a motion for judgment on the pleadings.

## DISCUSSION

### I.     STANDARD OF REVIEW

In reviewing a motion to dismiss under Rule of Civil Procedure 12(b)(6), the Court considers all facts alleged in the complaint as true to determine if the complaint states a "claim to relief that is plausible on its face." *See e.g. Braden v. Wal-Mart Stores, Inc.*, 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  To survive a

---

[4] Defendants ATA and McGowan file their respective Motions based on Rule 12(b)(7), however their arguments in support focus on Rule 12(b)(6).  Accordingly, the Court will treat both as 12(b)(6) Motions.

[5] The Court may retain jurisdiction over related state law claims after dismissing all claims over which the Court had original jurisdiction under 28 U.S.C. § 1367(c)(3).  However, because the Court will not dismiss all federal claims in this matter and because the Court has broad discretion in determining whether to exercise supplemental jurisdiction, the Court finds Defendants' 12(b)(1) challenges unavailing.  *See Crest Constr. II, Inc. v. Doe*, 660 F.3d 346, 359 (8th Cir. 2011).

motion to dismiss, a complaint must provide more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action[.]'"  *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Although the Court accepts the complaint's factual allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation."  *Twombly*, 550 U.S. at 555 (quotation omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility," and therefore must be dismissed.  *Id.* (quotation omitted).  The Court construes the complaint in the light most favorable to the plaintiff, drawing all inferences in their favor.  *Ashley Cty., Ark. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009).  When evaluating the merits of a motion for judgment on the pleadings pursuant to Rule of Civil Procedure 12(c), the Court applies the same legal standard as a motion to dismiss for failure to state a claim under Rule 12(b)(6).  *Id.*

Claims that sound in fraud are subject to heightened pleading standards under Rule 9(b), and "must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  Defendants must be able to "respond specifically, at an early stage of the case, to potentially damaging allegations of immoral and criminal conduct."  *Abels v. Farmers Commodities Corp.*, 259 F.3d 910, 920 (8th Cir. 2001).  "Where

multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud." *Streambend Props. II, LLC v. Ivy Tower Minneapolis, LLC*, 781 F.3d 1003, 1013 (8th Cir. 2015) (quoting *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987)). In other words, "the complaint must identify the 'who, what, where, when, and how' of the alleged fraud." *United States ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 556 (8th Cir. 2006) (citation omitted).

## II.   RICO CLAIMS (COUNT NINE) – ALL DEFENDANTS

The Racketeer Influenced Corrupt Organizations ("RICO") Act makes it unlawful "for any person employed by or associated with any enterprise engaged in . . . interstate . . . commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). A civil RICO claim has four elements: that defendants engaged in "(1) conduct (2) of an enterprise; (3) through a pattern (4) of racketeering activity." *H & Q Props., Inc. v. Doll*, 793 F.3d 852, 856 (8th Cir. 2015) (quoting *Nitro Distrib. Inc. v. Alticor, Inc.*, 565 F.3d 417 (8th Cir. 2009)). "Racketeering (predicate) acts include money laundering, mail fraud, and wire fraud." *Aguilar v. PNC Bank, NA*, 853 F.3d 390, 402 (8th Cir. 2017) (citing *RJR Nabisco, Inc. v. European Community*, 136 S. Ct. 2090, 2105 (2016)). These elements must be pleaded with respect to each Defendant. *Craig Outdoor Advert. v. Viacom Outdoor, Inc.*, 528 F.3d 1001, 1027 (8th Cir. 2008).

## A.  Conduct

The "conduct" element of RICO claims "authorize[s] recovery only against individuals who 'participate in the operation or management of the enterprise itself.'" *Handeen v. Lemaire*, 112 F.3d 1339, 1347 (8th Cir. 1997) (quoting *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993)).  "An enterprise is 'operated' not just by upper management but also by lower rung participants in the enterprise who are under the direction of upper management.  An enterprise also might be 'operated' or 'managed' by others 'associated with' the enterprise who exert control over it as, for example, by bribery."  *Id.* at 1348 (quoting *Reves*, 507 U.S. at 184).

The Complaint alleges two sets of facts that Plaintiffs argue together state a claim of impermissible conduct under RICO.  First, that Defendants Cris Burger, Lisa Burger, and ATA committed fraud by making intentionally false material representations about ATA to Plaintiffs prior to the sale, including concealing allegedly fraudulent sales practices by Defendant McGowan.  Second, that Defendants Cris Burger and McGowan created ADvantage and conspired to defraud SYT customers into doing business with ADvantage instead of with SYT.

## B.  Enterprise

An "enterprise" refers generally to "the vehicle through which the unlawful pattern of racketeering activity is committed."  *Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 259 (1994).  RICO broadly defines "enterprise" to "includ[e] any individual,

partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."  18 U.S.C. § 1961(4).  To allege an enterprise in the Eighth Circuit, Plaintiffs must show: "(1) a common or shared purpose; (2) some continuity of structure and personnel; and (3) an ascertainable structure distinct from that inherent in a pattern of racketeering."  *Handeen*, 112 F.3d at 1351.  Plaintiffs allege that ATA, Cris Burger, Lisa Burger, and later McGowan and ADvantage, collectively formed an "association-in-fact" enterprise.  An association-in-fact enterprise requires three structural features: "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose."  *Boyle v. U.S.*, 556 U.S. 938, 946 (2009).

Plaintiffs allege that Defendants ATA, Cris Burger, Lisa Burger, McGowan, and ADvantage had a common purpose of defrauding Plaintiffs and thereby enriching Defendants.  However, Plaintiffs' allegations of pre-sale misrepresentations implicate only Lisa Burger, Cris Burger, and ATA; fraudulent activity after the sale is plausibly alleged only as to Cris Burger, David McGowan, and ADvantage.  As such, the singular common thread between the unlawful acts alleged prior to the sale, during negotiations, and after the sale is Cris Burger.[6]  One person who straddles various allegedly fraudulent activities is insufficient to establish a continuous association-in-fact enterprise.

---

[6] Plaintiffs argue that there was continuity because Defendants as a whole were engaged in allegedly fraudulent acts before, during, and after the sale.  However, continuity of structure to

### C.     Pattern

"A pattern is shown through two or more related acts of racketeering activity that 'amount to or pose a threat of continued criminal activity.'"  *Nitro Distrib., Inc.*, 565 F.3d at 428 (quoting *Wisdom v. First Midwest Bank,* 167 F.3d 402, 406 (8th Cir. 1999)). Plaintiffs must establish either that "multiple predicate acts occur[ed] over a substantial period of time (closed-end continuity)" or that "the alleged predicate acts threaten to extend into the future (open-ended continuity)." *Craig Outdoor Advert., Inc.*, 528 F.3d at 1028.  The Eighth Circuit has held that closed-end continuity "can be shown by related acts continuing over a period of time lasting at least one year."  *Crest Constr. II, Inc. v. Doe,* 660 F.3d 346, 357 (8th Cir. 2011) (quoting *United States v. Hively*, 437 F.3d 752, 761 (8th Cir. 2006)).

As noted above, Plaintiffs have only supplied conclusory statements that specific Defendants were involved in the various stages of fraudulent activity.  The facts as pleaded demonstrate relatively distinct nodes of activity involving different actors, bridged only by Cris Burger.  Accordingly, Plaintiffs have not demonstrated the existence of a pattern.

---

prove an enterprise is different from continuity to prove the pattern element of a RICO claim. The pattern element relates to a pattern of conduct over time, whereas "[c]ontinuity of structure exists where there is an organizational pattern. . . . [T]he determinative factor [for continuity-of-personnel] is whether the associated ties of those charged with a RICO violation amount to an organizational pattern." *Handeen v. Lemaire*, 112 F.3d 1339, 1351 (8th Cir. 1997) (quoting *United States v. Kragness*, 830 F.2d 842, 856 (8th Cir. 1987)).

### D.     Racketeering Activity

Racketeering activity includes any act which is indictable under 18 U.S.C. § 1341, relating to mail fraud, or § 1343, relating to wire fraud.  Section 1341 provides penalties for anyone who uses the Postal Service for the purpose of executing or attempting to execute "any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises."  18 U.S.C. § 1341.  Section 1343 includes the same elements, but through interstate telephone call or electronic communication.  *Id.* § 1343.  "When pled as RICO predicate acts, mail and wire fraud require a showing of: (1) a plan or scheme to defraud, (2) intent to defraud, (3) reasonable foreseeability that the mail or wires will be used, and (4) actual use of the mail or wires to further the scheme."  *H & Q Props., Inc.*, 793 F.3d at 856–57 (quoting *Wisdom v. First Midwest Bank, of Poplar Bluff,* 167 F.3d 402, 406 (8th Cir. 1999)).

Defendants used email and telephone to communicate with Plaintiffs and third parties and Plaintiffs allege that some of these communications contained false or misleading information.  However, the closest Plaintiffs come to sufficiently alleging a scheme to commit mail or wire fraud is McGowan's purportedly fraudulent interactions with ATA customers, some of which occurred via telephone or email.  As Plaintiffs acknowledge in their briefing, they lack standing to bring claims on the customers' behalf, so they argue instead that Defendants' failure to disclose these sales practices are the RICO predicate acts, despite providing very limited facts to suggest that other Defendants

utilized the mail or wires in service of this mission.  Accordingly, Plaintiffs' "allegations fall . . . short of establishing mail or wire fraud." *H & Q Properties, Inc.*, 793 F.3d at 857.

In sum, RICO was not intended to apply to "ordinary commercial fraud," *Craig Outdoor Advert., Inc.,* 528 F.3d at 1029.  Nor does it apply to "all instances of wrongdoing." *Crest Constr. II, Inc.,* 660 F.3d at 353 (quoting *Gamboa v. Velez,* 457 F.3d 703, 705 (7th Cir.2006)).  Plaintiffs fail to allege facts consistent with the existence of an enterprise or the "organized, long-term, habitual criminal activity" characteristic of a RICO claim.  *Crest Constr. II, Inc.,* 660 F.3d at 353.  In addition, Plaintiffs have not pled their various RICO allegations with the particularity required of Rule 9(b) as to all Defendants. The Court will therefore dismiss with prejudice Plaintiffs' RICO Claims in Count Nine.

## III.   LANHAM ACT CLAIMS (COUNT ELEVEN) – C. BURGER, MCGOWAN, & ADVANTAGE

Section 1125(a) of the Lanham Act creates a civil remedy for a party harmed by a person who uses in commerce, "any word, term, name" or "any false designation of origin . . . or misleading representation of fact" that is likely to cause confusion or mistake or "deceive as to the affiliation, connection, or association of such person with another person[.]" 15 U.S.C. § 1125(a)(1).  "A claim of trademark infringement under the Lanham Act requires ownership of a valid trademark and a likelihood of confusion between the registered mark and the alleged infringing use by the defendant." *Safeway Transit, LLC v. Disc. Party Bus, Inc.*, 334 F. Supp. 3d 995, 1003–04 (D. Minn. 2018), *aff'd* 954 F.3d 1171

(8th Cir. 2020) (quoting *Plasti Dip Int'l, Inc. v. Rust-Oleum Brands Co.*, No. 14-1831, 2014 WL 7183789 at *2 (D. Minn. Dec. 16, 2014).

To determine the likelihood of confusion, the Court considers six factors: "(1) the strength of the trademark owner's mark; (2) the similarity between the trademark owner's mark and the alleged infringing mark; (3) the degree to which the allegedly infringing services competes with the trademark owner's services; (4) the alleged infringer's intent to confuse the public; (5) the degree of care reasonably expected of potential customers; and (6) evidence of actual confusion." *Cmty. of Christ Copyright Corp. v. Devon Park Restoration Branch of Jesus Christ's Church*, 634 F.3d 1005, 1009 (8th Cir. 2011). "[N]o one factor controls, and because the inquiry is inherently case-specific, different factors may be entitled to more weight in different cases." *Id.* (quoting *Kemp v. Bumble Bee Seafoods, Inc.*, 398 F.3d 1049, 1053 (8th Cir. 2005).

The assets that SYT acquired in the sale included all intellectual property, copyrights, trademarks, trade dress and trade names, business names, and associated goodwill. (Agreement § 1.1(d).) Plaintiffs argue that these assets include "the marks ADVANTAGE, ADVANTAGE TAPE, and ADVANTAGE TAPE ADVERTISING." (Compl. ¶ 257.) The parties do not dispute that the business names or marks are used in commerce; both Advantage Tape Advertising and ADvantage sell advertisements regionally.

Although the word at the heart of the dispute—"advantage"—is commonly used in a variety of industries and for a variety of purposes, because ATA was well known to

the class of customers that ADvantage is allegedly now targeting, it is likely more recognizable to this consumer class than it would be to the general public. Plaintiffs describe multiple instances in which Cris Burger or McGowan allegedly contacted competitors or customers and either failed to disclose or intentionally concealed the distinction between ATA and ADvantage. The likelihood of confusion is compounded by the continuity of personnel (Cris Burger and McGowan) between ATA, SYT, and ADvantage. Because Plaintiffs have plausibly alleged that they own the trademark for "Advantage Tape Advertising," that Defendants' use of "ADvantage" is likely to cause confusion, and that Defendants used "ADvantage" with an intent to confuse, the Court will deny Cris Burger, ADvantage, and McGowan's Motions to Dismiss Count Eleven.

## IV.   STATE LAW CLAIMS

### A. Common Law Trademark Infringement (Count Ten) and Violations of the MDTPA (Count Thirteen) – C. Burger, ADvantage, and McGowan

Despite their distinct origins, the elements for proving trademark infringement claims under the common law, the MDTPA, and the Lanham Act mirror each other, and Courts analyze them coextensively. *DaimlerChrysler AG v. Bloom*, 315 F.3d 932, 935 n.3 (8th Cir. 2003); *DeRosier v. 5931 Business Trust*, 870 F. Supp. 941, 947 n.8 (D. Minn. 1994). As explained above, the Court finds that Plaintiffs have pleaded sufficient facts to suggest that they own the trademark for Advantage Tape Advertising, that Defendants' use of ADvantage is likely to cause confusion, and that Defendants used ADvantage with an

intent to confuse.  Accordingly, the Court will likewise deny Cris Burger/ADvantage's and McGowan's Motions to Dismiss Counts Ten and Thirteen for common law trademark infringement and violations of the MDTPA.

### B. Fraud or Intentional Misrepresentation (Count Eight) – C. Burger, L. Burger, and ATA

Under Minnesota Law, a Plaintiff claiming fraud or intentional misrepresentation must establish: "(1) a false representation of a past or existing material fact susceptible of knowledge; (2) made with knowledge of the falsity of the representation or made without knowing whether it was true or false; (3) with the intention to induce action in reliance thereon; (4) that the representation caused action in reliance thereon; and (5) pecuniary damages as a result of the reliance."  *U.S. Bank N.A. v. Cold Spring Granite Co.*, 802 N.W.2d 363, 373 (Minn. 2011).  Allegations of fraud trigger the heightened pleading standards of Rule 9(b).

Plaintiffs allege that Defendants Cris Burger, Lisa Burger, and ATA made a number of representations that they knew to be false, that were material to the negotiations, made intentionally to induce Plaintiffs to purchase ATA's Assets, and upon which Plaintiffs relied to their financial detriment.  While the Complaint includes multiple specific allegations directed at Cris Burger, there is only one allegedly false—but not particularly significant—statement specifically attributed to Lisa Burger.  There are many allegations that "the Burgers" made representations, or provided incomplete information, but Rule 9(b) requires that Plaintiffs plead "such facts as the time, place, and content of the

-19-

defendant's . . . fraudulent acts, including when the acts occurred, who engaged in them, and what was obtained as a result." *Olson v. Fairview Health Servs. of Minn.*, 831 F.3d 1063, 1070 (8th Cir. 2016) (quotation omitted).  Particularly given the fraught legal and personal relationship between Cris and Lisa Burger, it does not meet the particularity requirements of Rule 9(b) to lump the two together without more explicit allegations related to Lisa Burger's specific conduct.  Plaintiffs have similarly failed to specifically plead that ATA was involved in the fraudulent conduct alleged against Cris Burger or "the Burgers."  The Court will accordingly deny Cris Burger's Motion and will grant Lisa Burger's and ATA's Motions, dismissing Count Eight as to Lisa Burger and ATA without prejudice. Should Plaintiffs attempt.   to cure the deficiency in their pleadings, they must allege detailed facts supporting fraud specific to Lisa Burger and ATA.

### C.    Negligent Misrepresentation (Count Seven) – C. Burger, L. Burger, and ATA

To state a claim for negligent misrepresentation, the Plaintiff must demonstrate that (1) the defendant owed a duty of care to the plaintiff, (2) the defendant supplied false information to the plaintiff, (3) the plaintiff justifiably relied on that information, and (4) the defendant failed to exercise reasonable care in communicating the information. *See Aulick v. Skybride Ams., Inc.*, 860 F.3d 613, 623 (8th Cir. 2017).   However, the Minnesota Supreme Court has "carefully limited recognition of the tort of negligent misrepresentation," *Williams v. Smith*, 820 N.W.2d 807, 821 (Minn. 2012), and Minnesota courts have not recognized a duty of care for arm's length commercial transactions,

*see Smith v. Woodwind Homes, Inc.*, 605 N.W.2d 418, 424 (Minn. Ct. App. 2000) ("[W]here adversarial parties negotiate at arm's length, there is no duty imposed such that a party could be liable for negligent misrepresentations."); *cf. Valspar Replenish, Inc. v. Gaylord's Inc.*, 764 N.W.2d 359, 370 n.7 (Minn. 2009) (declining to decide whether negligent misrepresentation can arise from an arm's-length commercial transaction). In this case, the parties thoroughly negotiated the terms of the Agreement, both sides had access to legal counsel, and each party was acting in their own commercial interest. Because Minnesota courts have declined to recognize a duty from this sort of adversarial transaction, the Court will grant Cris Burger's, Lisa Burger's, and ATA's Motions, and will dismiss Count Seven with prejudice as to all Defendants.

### D.   Unjust Enrichment (Count Two) – C. Burger, L. Burger and ATA, and Quantum Meruit (Count Three) – C. Burger and L. Burger

To prevail on a claim of unjust enrichment under Minnesota law, "a claimant must establish an implied-in-law or quasi-contract in which the defendant received a benefit of value that unjustly enriched the defendant in a manner that is illegal or unlawful." *Caldas v. Affordable Granite & Stone, Inc.*, 820 N.W.2d 826, 838 (Minn. 2012). "Unjust enrichment may be founded on failure of consideration, fraud, or mistake, or situations where it would be morally wrong for one party to enrich himself at the expense of another." *Mon-Ray, Inc. v. Granite Re, Inc.*, 677 N.W.2d 434, 440 (Minn. Ct. App. 2004) (quotation omitted). "Recovery in quantum meruit may be obtained where a benefit is conferred and knowingly accepted under such circumstances that would make it unjust

to permit its retention without payment." *In re Stevenson Assocs., Inc.*, 777 F.2d 415, 421 (8th Cir. 1985). In Minnesota, "[t]he existence of an express contract between the parties precludes recovery under the theories of quasi-contract, unjust enrichment, or quantum meruit." *Sterling Capital Advisors, Inc. v. Herzog*, 575 N.W.2d 121, 126 (Minn. Ct. App. 1998) (citing *Sharp v. Laubersheimer*, 347 N.W.2d 268, 271 (Minn. 1984)).

Plaintiffs acknowledge that they cannot prevail on both breach of contract and unjust enrichment/quantum meruit claims. Nevertheless, at the motion to dismiss stage courts "routinely permit the assertion of contract and quasi-contract claims together." *Cummins Law Office, P.A. v. Norman Graphic Printing Co.*, 826 F. Supp. 2d 1127, 1130 (D. Minn. 2011). The Court finds that Plaintiffs have pleaded sufficiently plausible allegations of unjust enrichment and quantum meruit as an alternative to the breach of contract claims, discussed below, to survive a motion to dismiss. Therefore, the Court will deny Cris Burger's and Lisa Burger's Motions to Dismiss Counts Two and Three, and ATA's Motion to Dismiss Count Two.

### E.  Breach of Contract (Counts One and Six) – C. Burger, L. Burger, and ATA

To plausibly allege breach of contract in Minnesota, Plaintiffs must demonstrate: "(1) formation of a contract, (2) performance by plaintiff of any conditions precedent to his right to demand performance by the defendant, and (3) breach of the contract by defendant." *Park Nicollet Clinic v. Hamann*, 808 N.W.2d 828, 833 (Minn. 2011). The elements of a breach of warranty claim are (1) the existence of a warranty, (2) breach of

the warranty, and (3) causation of damages.  *Peterson v. Bendix Home Sys. Inc.*, 318

N.W.2d 50, 52–53 (Minn. 1982).[7]

The Agreement includes several express warranties and obligations that attach to

the Seller and the Shareholders, respectively.  Ordinarily, one party to a transaction does

not have a duty to disclose material facts to the other.  *Klein v. First Edina Nat'l Bank,* 196

N.W.2d 619, 622 (1972).  However, in this case, the Seller had an explicit duty not to

withhold any material facts and guaranteed that no representation or warranty contained

any untrue material statements.  Plaintiffs make detailed allegations about the falsity of

particular representations that relate to the express warranties in the Agreement.

Because ATA, as the Seller, was responsible for the key representations and warranties at

issue, the Court will deny ATA's Motion to Dismiss Counts One and Six.

The Burgers each argue that they are listed as Shareholders on the Agreement and

all pertinent representations and warranties are made by the Seller, ATA.  Thus, Cris

Burger and Lisa Burger each assert that any representations made by the Burgers were in

a professional capacity on behalf of ATA.  Corporate officers are generally "shielded from

personal liability" to allow them to act "in the best interests of the corporation."  *Furlev*

---

[7] None of the parties dispute that a contract was formed or that Plaintiffs performed the
conditions precedent to demand Defendants' performance of the contract, so the Court need
only address whether Plaintiffs have sufficiently alleged a breach and by whom.  With regard to
the breach of warranty claim, Plaintiffs have exhaustively pleaded that they were damaged by
purchasing $1.5 million worth of assets that they would not have purchased but for the breach
of warranty, so the Court will not address the damage question in further detail here.

*Sales & Assocs., Inc. v. N. Am. Auto. Warehouse, Inc.*, 325 N.W.2d 20, 26 (Minn. 1982). However, the corporate veil can be pierced to impose personal liability on a shareholder who engages in fraudulent conduct in the discharge of official duty. *See Victoria Elevator Co. v. Meriden Grain Co., Inc.*, 283 N.W.2d 509, 512 (Minn. 1979) (discussing fraud as a reason to impose personal liability). Further, a duty to disclose material facts may be imposed under special circumstances, including if disclosure is required to prevent one's words from misleading the other party, or if one has special knowledge of material facts to which the other party does not have access. *Klein*, 196 N.W.2d at 622. Plaintiffs have plausibly alleged that those special conditions are present in this dispute.

Because a breach of contract claim does not require the heightened pleading standards of Rule 9(b), the Court will resolve ambiguous references to actions taken by "the Burgers" in Plaintiffs' favor for Counts One and Six, allowing Plaintiffs the opportunity to prove that Cris Burger and Lisa Burger acted in a way that would justify piercing the corporate veil as to representations made in a professional capacity. The Court will therefore deny Cris Burger's and Lisa Burger's Motions to Dismiss Counts One and Six.

## F.     Breach of Warranty to Indemnify (Count Fourteen) – C. Burger, L. Burger, and ATA

Under Minnesota law, an indemnity agreement should be "construed according to the principles generally applied in the construction or interpretation of other contracts," *Buchwald v. Univ. of Minn.*, 573 N.W.2d 723, 726 (Minn. Ct. App. 1998), and should receive "a fair construction that will accomplish its stated purpose," *Sorenson v. Safety*

*Flate, Inc.*, 235 N.W.2d 848, 852 (Minn. 1975) (quoting *N.P. Ry. Co. v. Thornton Bros. Co.*, 288 N.W. 226, 227 (Minn. 1939)).  The central question is whether the contract language is ambiguous.  *In re RFC and RESCAP Liquidating Trust Action*, 332 F. Supp. 3d 1101, 1130–31 (D. Minn. 2018).

In this case, the Agreement is explicit that the Seller, ATA, will indemnify Purchaser, officers, directors, and shareholders harmless against a host of conditions, including breaches of warranty or failure to perform any of Seller's obligations under the agreement.  Accordingly, the Court will deny ATA's Motion to Dismiss Count Fourteen.  Because the Agreement includes no indemnification by Shareholders, the Court will grant Cris Burger's and Lisa Burger's Motions and will dismiss Count Fourteen with prejudice as to Cris Burger and Lisa Burger.

## G. Breach of Non-Competition Agreements (Counts Four and Five) – C. Burger and L. Burger

Minnesota courts have upheld non-competition agreements "where the restraint is for a just and honest purpose, for the protection of a legitimate interest of the party in whose favor it is imposed, reasonable as between the parties, and not injurious to the public[.]"  *Haynes v. Monson*, 224 N.W.2d 482, 483 (1974) (quotation omitted).  These types of covenants should be strictly construed.  *Id.*  Plaintiffs must also show that they performed any conditions precedent to their right to demand performance by the defendant.  *Hamann*, 808 N.W.2d at 833.

Plaintiffs do not allege facts consistent with a plausible violation of Cris Burger's NCA prior to August 2018, and after August 2018 the agreement was no longer in effect due to Plaintiffs' default on the Promissory Note.  The allegations against Lisa Burger also fall short of stating a plausible claim for breach.  Accordingly, the Court will grant Cris Burger's and Lisa Burger's Motions and dismiss Counts Four and Five with prejudice.

### H.   Tortious Interference with Contract (Count Twelve) – C. Burger, ADvantage, and McGowan

Plaintiffs allege that Cris Burger and McGowan, using ADvantage, conspired to interfere with Cris Burger's NCA.  To prevail on a claim of tortious interference with contract, a plaintiff needs to establish the following elements: "(1) the existence of a contract; (2) the alleged wrongdoer's knowledge of the contract; (3) intentional procurement of its breach; (4) without justification; and (5) damages."  *E-Shops Corp. v. U.S. Bank Ass'n*, 678 F.3d 659, 664 (8th Cir. 2012).

For the reasons discussed above, Cris Burger's Non-Compete Agreement has not been in effect since August 2018 and ADvantage was not created until 2019.  In the absence of a contract, the Court will grant Cris Burger/ADvantage's and David McGowan's motions and dismiss Count Twelve against all parties with prejudice.

### I.   Declaratory Judgment (Count Fifteen)

Courts generally deny claims for declaratory relief where the relief sought may be obtained under other causes of action, *Althaus v. Cenlar Agency, Inc.*, No. 17-445, 2017

WL 4536074, at *6 (D. Minn. Oct. 10, 2017), or where the declaratory judgment request is redundant with other asserted claims. *Mille Lacs Band of Chippewa Indians v. Minnesota*, 152 F.R.D. 580, 582 (D. Minn. 1993). Because the claims that survive the various Motions to Dismiss rely upon development of the factual record and would be better served through other legal avenues, the Court will dismiss Count Fifteen as to all parties.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant ATA's Motion to Dismiss [Docket No. 8], Defendant Lisa Burger's Motion to Dismiss [Docket No. 26], Defendants Cris Burger and The ADvantage Companies' Motion to Dismiss [Docket No. 34], and Defendant David McGowan's Motion for Judgment on the Pleadings [Docket No. 56] are each **GRANTED** in part and **DENIED** in part, as follows:

1. Count 1: Breach of Asset Purchase Agreement — Motions to Dismiss are **DENIED** as to Defendants Cris Burger, Lisa Burger, and ATA;

2. Count 2: Unjust Enrichment — Motions to Dismiss are **DENIED** as to Cris Burger, Lisa Burger, and ATA;

3. Count 3: Quantum Meruit — Motions to Dismiss are **DENIED** as to Cris Burger and Lisa Burger;

4. Count 4: Breach of Non-Competition Agreement (Cris Burger) — Motion to Dismiss is **GRANTED**, and Count 4 is **DISMISSED with prejudice** as to Cris Burger;

5. Count 5: Breach of Non-Competition Agreement (Lisa Burger) — Motion to Dismiss is **GRANTED**, and Count 5 is **DISMISSED with prejudice** as to Lisa Burger;

6.  Count 6: Breach of Warranty — Motions to Dismiss are **DENIED** as to Cris Burger, Lisa Burger, and ATA;

7.  Count 7: Negligent Misrepresentation — Motions to Dismiss are **GRANTED**, and Count 7 is **DISMISSED with prejudice** as to Cris Burger, Lisa Burger, and ATA;

8.  Count 8: Fraud/Intentional Misrepresentation — Motion to Dismiss is **DENIED** as to Cris Burger; Motions to Dismiss are **GRANTED** and Count 8 is **DISMISSED without prejudice** as to Lisa Burger and ATA;

9.  Count 9: RICO Violations — Motions to Dismiss are **GRANTED** and Count 4 is **DISMISSED with prejudice** as to all Defendants;

10. Count 10: Common Law Trademark Infringement — Motions to Dismiss are **DENIED** as to Cris Burger, ADvantage, and McGowan;

11. Count 11: Lanham Act Violations — Motions to Dismiss are **DENIED** as to Cris Burger, ADvantage, and David McGowan;

12. Count 12: Tortious Interference with Contract — Motions to Dismiss are **GRANTED** and Count 12 is **DISMISSED with prejudice** as to Cris Burger, ADvantage, and McGowan;

13. Count 13: Minnesota Deceptive Trade Practices Act Violations — Motions to Dismiss are **DENIED** as to Cris Burger, ADvantage, and David McGowan;

14. Count 14: Breach of Warranty to Indemnify — Motions to Dismiss are **DENIED** as to ATA; Motions to Dismiss are **GRANTED** and Count 14 is **DISMISSED with prejudice** as to Cris Burger and Lisa Burger;

15. Count 15: Declaratory Judgment — **DISMISSED without prejudice** as to all parties.


DATED: January 12, 2021
at Minneapolis, Minnesota.

_____
JOHN R. TUNHEIM
Chief Judge
United States District Court